Mr. Seggerman, did I pronounce that correctly? Yes, you did. Please take your time to get settled. I do want to ask you, the clerk, as in for me, that you have not retained any of the information that you have submitted to me. You have not retained any time for rebuttal, so you understand that you are using your full five minutes and that you will not have an opportunity to come back, is that correct? Yes, I do understand that. All right. I am very all set. All right, thank you. You may proceed when you're ready. Your Honor, Zappellant disputes neither tax debt nor tax lien, only the notice of federal tax lien known as NFTL. The case rests upon statutes. United States Tax Court was created seven decades ago. Taxpayer Advocate Service was created in its final form three decades ago. In the Taxpayer Bill of Rights 2, known as TBOR 2, the language in both creations stressed emphatically their purpose of protecting American taxpayers. Even today, both of their home pages continue to advertise these protections. However, in the ensuing decades, Appellee, in fact, succeeded in chipping away at those protections, bluntly putting two foxes in charge of the henhouse. Your Honors, today you have the opportunity to end this saddening erosion of those foundational mandates. It was not surprising that Tax Court indicated resistance in the days immediately following the Supreme Court's ruling against the Chevron doctrine this year. On June 30, 2021, Appellant filed Form 911, clearly subtitled in bold letters, Application for Taxpayer Assistance Order. The Taxpayer Advocate Service urged Appellant to file Form 12277, Application for Withdrawal of the NFTL. Did the Taxpayer Advocate Service enter a Taxpayer Assistance Order? They did not. They submitted it, is all I was told. Wait, wait. I'm sorry. They submitted what? They submitted Form 12277, Application for Withdrawal of the NFTL. They forwarded that to the IRS? To advisory, is what I was told. Okay. But is there not such a thing as a Taxpayer Assistance Order? I do not know of one. I do not know that they actually do it as the statute requires. Let me continue because I'm discussing alternatives and their response beyond that. Application for Withdrawal of the NFTL, which he did on August 2nd. There was no mention whatsoever of an available Form 12277 in the settlement officer's scheduling letter for the collections due process hearing. Tax Court accepted Appellant's petition to hear a case about the withdrawal application. It was obvious from Appellee's own records that the application was filed. Why in blazes would Appellee refuse to stipulate the application itself? There was also no written record of the Taxpayer Advocate informing Appellant that either it did not support the application for withdrawal or that the Operations Assistance Request, known as OAR, would be how it submitted the application to Appellee. The OAR is a good example of how taxpayer protections with the Taxpayer Advocate have eroded. TOR 2 regulation only mentioned the Taxpayer Assistance Order, shown clearly in the top of Form 911, which could be rescinded, quote, only by the Taxpayer Advocate, the Commissioner of Internal Revenue, or the Deputy Commissioner of Internal Revenue, unquote. None of which happened. Any taxpayer protection has been incinerated in the fine print, most glaringly the parenthetical words, quote, but is not required to, unquote, an out clause that beats all other out clauses. Appellant received TV Ameritrade's notification he was shutting down his IRA account less than a month after the NFTL was issued, along with a flood of junk mail from shady tax rescue shops. Appellee employs tens of thousands of accountants and tax lawyers who scrutinize records prepared by financial institutions day in and day out. Certainly they know that no law exists compelling those institutions to tell customers why they are shutting down accounts and that they never do. Could you explain to me what exactly happens here? You had an IRA account at TD Bank? TD Ameritrade. TD Ameritrade. Okay. And they closed it. What happened to the money? The money had to be liquidated within 30 days. Well, liquidated how? I mean, were you able to open another IRA account? I'm just trying to understand. No. No. I did not apply for one. I figured it would not be possible under the circumstances. Okay. So you just got the money, and then you had to pay taxes on it because of it? I had to pay taxes on it, and we're getting to that because this is important to know. Yeah, because I want to understand what the prejudice is. There's deadlines. There's deadlines of 60 days before you can file your – you must file with – petition with tax court, and then 90 days before you can come here and so forth and so on. Right. I'm just trying to understand what the prejudice was, and I think I understand it now. Okay. What happened when the account was closed. Okay. Thank you. Okay. So trying to get through it in five minutes. Right. Because Apolli refused to stipulate Form 12277, T.D. Ameritrade's letter was suppressed in tax court. Certainly, Apolli's accountants and lawyers also know that financial damages often cannot be calculated until the filing of tax returns, which can be as late as October 15th of the year after the pertinent action. This calculated financial damage thus could only be presented as a trial exhibit, which respondents' counsel and tax court simply ignored. T-Board II mandates that every year the taxpayer advocate must make a report to Congress. Apolli's counsel brazenly dismissed one of these T-Board II mandated reports listed in Apolli's other authorities as a mere quote-unquote publication. In it, the taxpayer advocate reported that IRS collection leadership was resistant to NFTL withdrawal and had even characterized withdrawal as verbatim, quote, an admission of guilt and that training employees, unquote, then continuing, quote, will confuse collection employees and result in not filing liens, unquote. The NFTL is purely punitive and clearly makes it more difficult for the taxpayer to return to a financial condition allowing for payments. The record shows that Appellant has never filed false Forms 1040, ever. Nonetheless, respondents' counsel, having waited until her seriatim opening brief, unleashed a false and fraudulent allegation that Appellant filed, quote, false Forms 1040 for tax years 2001 through 2009, unquote. Appellant, representing himself pro se, doesn't know if this bold falsehood was perjury or, inasmuch as respondents' counsel was protecting collections activity, misconduct. Thankfully, Appellant's counsel's opening brief does not repeat this suggestio falsi, although Appellant did notice the word criminal repeated 19 times in that brief, basically on every other page. Statistically, it's probably the most often used adjective in the brief. For the foregoing reasons, Appellant asked the court to reverse the holding of the court below and not remand the case, given tax court's dispiriting record of only reversing about one in a million remanded collection cases. Attorney, Mr. Segrevin, thank you very much. And just for the record, you were given about three minutes extra of your time so that you could complete your argument. Thank you very much. Well, thank you for giving it to me, but I read through it quickly because I figured there was a, you know, I'd be gong showed off. No, no. And we have, obviously, an audio record of it as well. Thank you very much. Thank you. Thank you. Attorney Schuman. May it please the Court, I am John Schuman with the U.S. Department of Justice, and I represent the United States Commissioner of Internal Revenue. The tax court in this case correctly held that the IRS, Independent Office of Appeals, acted within its discretion in sustaining a notice of federal tax lien as a means of collecting Mr. Segrevin's restitution-based assessment in this case. I did want to address this issue of the IRA, and the Court, both administrative proceedings below, found that the appellant had not, Mr. Segrevin, had not provided proof of either reduced income or harm as a result of the IRA, and that none was presented to the Court below. Today, at argument, there was obviously the report that in withdrawing his IRA, he had to pay tax on it or a penalty, and therefore received reduced funds. Can you elucidate on what happened with the IRA? Was he forced to close out his IRA? Your Honor, the record actually does not reflect any of that. There's very minimal references to the IRA at all. We do know that he asserted during the administrative process, the collection due process hearing for the IRS, Mr. Segrevin asserted that he had problems with his IRA and it had been shut down. So during the collection due process hearing, which was a telephone conversation between the settlement officer and Mr. Segrevin, he was asked, do you have any evidence of what happened here or any documentation? And according to the notes that were kept contemporaneously by the settlement officer, he said, no, I don't have evidence of this. So under Treasury regulations, because he didn't submit evidence before the Office of Appeals, he was not allowed to raise that issue in tax court, but he did anyway. And the tax court was rather lenient and allowed him to bring in evidence outside the administrative record and to ‑‑ To supplement the administrative record? Well, essentially, yes, Your Honor. And was that done? Yes. Those exhibits, all the exhibits that he proposed at trial before the tax court, they were all admitted. They were all received into evidence. So there was no suppression of evidence here. There was nothing that was left out. But even if you look at those exhibits, I think it's Exhibits 40 through 43P, there's still no evidence of what exactly happened with regard to the IRA. Is there not some statement in evidence that TD Ameritrade closed the account? Yes. There is some documentation about the closure of the account. Now, there's no evidence of causation or why it was closed. And ‑‑ Is there any dispute that it was not at Mr. Segerman's request? Well, the documentation indicates ‑‑ The documentation doesn't say anything other than it's closed. I believe you could look at it to say that it was closed at the option of the financial institution. Right. It was not known. He didn't ask for it to be closed as far as I know. And there is at least some, you know, logicians would say weak, I suppose, post hoc, post hoc ergo propter hoc, but there is temporal proximity between when the lien is filed and when the account gets closed. There is temporal proximity, but nothing else. Okay. There's no indication. Also, I just learned now that Mr. Segerman didn't apply for an application for an IRA elsewhere, to have it rolled over or anything like that to avoid the tax consequences. So that, I guess, that was his decision. You say he didn't think it would work. Of course, he didn't try. Could you just enlighten me on why the lien? I mean, I'm a novice. I never was a collection attorney of any kind. It is common ground, I take it, because this is what the revenue officer told the hearing officer, that Mr. Segerman doesn't have the resources to make any payments beyond what he's making under the restitution schedule imposed by the court in the criminal case. So what is the lien going to do? If he wins the lottery, you get to collect. If he passes away, you get to make a claim against the estate for anything that, I don't know, would be otherwise protected as his household. I mean, what does the lien do for you? Well, the federal tax lien actually exists before there is ever even a filing, and it arises by operation of law.  Correct. So the filing of the notice of federal tax lien preserves and protects the government's interests in terms of priority against any other creditors that might be out there. So it's not as if the government is trying actively to foreclose on that lien or to take a levy or any other measure. In fact, as the settlement officer determined, since he doesn't apparently have the ability to pay more than he's paying now, the case was placed in currently not collectible status. So they're not going to be doing any of that. But the purpose of the filing of the lien is just to protect the government's interests in the future, going forward, and its own priority, because Mr. Seggerman does have other assets. Okay. So I also wanted to, if there's a little bit of time left, I just wanted to... You're about 1 minute 20 to keep it fair. You've got about a minute and a half. Thank you, Your Honor. Just briefly, there is no evidence that the taxpayer advocate entered a taxpayer assistance order in this case. All they did was help Mr. Seggerman determine what kind of form he should fill out and where to send it to. They took care of that. That's all they did. They didn't make any other determination or consent to anything and certainly didn't issue a taxpayer assistance order. And the notice of federal tax lien is not punitive, as Mr. Seggerman says. Again, it only preserves the government's rights to its priority in its tax lien. And if there are no further questions, I would ask that the case be affirmed on the grounds set out in our answering brief. Thank you. Thank you. Seeing none, thank you to both sides. The court will reserve decision. That concludes our arguments for today.